# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DANIEL M. COVINGTON,

    *Plaintiff*,

v.

HELIX ELECTRIC, INC.,

    *Defendant*.

Civil Action No. 18-2727 (TJK)

## MEMORANDUM OPINION AND ORDER

    Daniel Covington used to work for Helix Electric, Inc., as an electrician in the District of Columbia. He asserts that he injured himself while on the job at a worksite here, but he filed a workers' compensation claim in Maryland, where he resides. After his injury, and before he filed his claim, Helix suspended Covington from his position and never asked him back. Covington now claims Helix fired him in retaliation for his pursuit of workers' compensation benefits. In this lawsuit, he brings a single common-law claim of wrongful discharge in violation of public policy.

    Helix has moved to dismiss the complaint, arguing that Covington cannot bring his wrongful discharge claim under District of Columbia law. In particular, it argues that Covington has failed to identify a public policy, as expressed in a statute or regulation, that his termination violated. And it further argues that the District of Columbia Court of Appeals has foreclosed the specific type of wrongful discharge claim he brings here.

    The Court agrees that Covington cannot bring his claim under District of Columbia law. But that does not end the matter; a choice-of-law analysis is required. The Court finds that under the District of Columbia's choice-of-law rules, Maryland law applies to Covington's claim. And under Maryland law, that claim may proceed. Accordingly, Helix's motion to dismiss is denied.

## I. Factual and Procedural Background

The facts, recounted here as alleged in the complaint, are uncomplicated. Daniel Covington is a licensed electrician. ECF No. 1 ("Compl.") ¶ 3. In 2016, he was employed by Helix Electric, Inc., to work in the District of Columbia. *Id.*

In November 2016, while on the job, Covington "tripped over debris in an unlit area," injuring his right foot, ankle, and leg. *Id.* ¶¶ 8–9, 11. Helix took him to receive medical attention. *Id.* ¶ 11. Five days later, Helix suspended him "without providing a reason." *Id.* ¶ 12. Covington thereafter never "return[ed] to work for Helix." *Id.* A week later, Covington filed a claim with the Maryland Workers' Compensation Commission based on the injuries he sustained while working for Helix. *Id.* ¶ 14.

Two years later, Covington commenced this action, bringing a single claim for the common-law tort of wrongful discharge. *See id.* ¶¶ 7–17. He claims that "Helix terminated [him] as a result of [his injury] on November 6, 2016[,] and [his] viable claim for workers' compensation benefit[s]." *Id.* ¶ 15. That termination, Covington contends, "[was] a clear violation of the public policies surrounding workers' compensation benefits," *id.* ¶ 17, and he seeks compensatory and punitive damages, *see id.* at 4.

Helix now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* ECF No. 3-1 ("MTD"). Covington has filed an opposition, ECF No. 6 ("Opp'n"), and Helix a reply, ECF No. 7.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). When ruling on such a motion, a court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court is generally limited to "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).  It must accept the factual allegations as true and construe them liberally, granting the plaintiff "the benefit of all inferences that can be derived from the facts alleged," but it need not "accept legal conclusions cast in the form of factual allegations."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III. Analysis

Helix's argument for dismissal is straightforward.  Covington brings a single claim of wrongful termination in violation of public policy—specifically, termination in retaliation for filing a workers' compensation claim in Maryland.  As this action proceeds under the Court's diversity jurisdiction, *see* Compl. ¶ 5, the Court must apply state substantive law.  *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  Wrongful termination, Helix acknowledges, is a common-law tort recognized in the District of Columbia.  *See* MTD at 1 (citing *Adams v. George W. Cochran & Co.*, 597 A.2d 28 (D.C. 1991)).  But to bring such a claim, Covington must identify the source of the alleged public policy in a statute or regulation.  Covington's complaint, Helix notes, cites no such source in District of Columbia law.  Indeed, Covington only references *Maryland's* workers' compensation statute.  *See* Compl. ¶ 6.  Therefore his claim must fail.  *See* MTD at 4–5.

Moreover, Helix argues, even if Covington could rely on a Maryland public policy—*i.e.* one expressed in Maryland's workers' compensation statute—for purposes of his tort claim under District of Columbia law, the District of Columbia Court of Appeals forecloses claims for wrongful discharge based on a statute that itself already provides a remedy for the party aggrieved by its violation.  *See id.* at 5 (citing *Nolting v. Nat'l Capital Grp., Inc.*, 621 A.2d 1387

(D.C. 1993)). And Helix insists that Maryland's workers' compensation act provides such a remedy. *Id.* at 5–6.

Covington's response is twofold. First, he argues that he can in fact bring a claim for wrongful discharge under District of Columbia law based on Maryland's workers' compensation statute. *See* Opp'n at 3. He contends that because he brought his claim in Maryland and that Maryland's workers' compensation statute does not—despite Helix's assertion to the contrary—provide a civil remedy, the District of Columbia's limitation on wrongful discharge claims where the relevant statute already provides a remedy does not apply. *See id.* at 3–4. Second, and alternatively, if he cannot bring a wrongful discharge claim under District of Columbia law, he urges this Court to engage in a conflict-of-law analysis. Under Maryland law, he points out, an individual has a common-law cause of action for wrongful discharge in retaliation for filing a workers' compensation claim. *See id.* at 5. That would present a conflict of laws, and Covington argues that the applicable choice-of-law analysis requires the application of Maryland law. *See id.* at 6–8.

Both parties, at least in certain respects, miss the mark. But the Court agrees with Covington that a choice-of-law analysis is required. That analysis leads to Maryland law, and, ultimately, to the conclusion that Covington's claim may proceed.

"A federal court sitting in diversity must apply the choice-of-law rules of the forum state—here, the District of Columbia." *In re APA Assessment Fee Litig.*, 766 F.3d 39, 51 (D.C. Cir. 2014). When it appears that multiple states might have an interest in a particular dispute, "the first step is to determine whether a 'true conflict' exists—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different." *GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C. Cir. 1992).

4

If such a conflict does indeed present, District of Columbia courts employ "a modified 'governmental interests analysis' which seeks to identify the jurisdiction with the 'most significant relationship' to the dispute." *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (quoting *Moore v. Ronald Hsu Constr. Co.*, 576 A.2d 734, 737 (D.C. 1990)).

Turning to that threshold question, the Court must determine whether the District of Columbia's and Maryland's laws "present no conflict, a false conflict, or a true conflict." *Barimany v. Urban Pace LLC*, 73 A.3d 964, 967 (D.C. 2013). "A 'no conflict' situation arises 'when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented.'" *Id.* (quoting *USA Waste of Md., Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008)). "A 'false conflict' situation arises '[w]hen the policy of one jurisdiction would be advanced by application of its laws, and the policy of the other jurisdiction would not be advanced by application of its laws.'" *Id.* (alteration in original) (quotation marks omitted) (quoting *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995)). And "[a] true conflict arises when both states have an interest in applying their own laws to the facts of the case" and the laws would lead to different outcomes. *Id.* (quoting *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002)).

To begin with, the Court finds that the laws of the two jurisdictions at issue—Maryland and the District of Columbia—do present a conflict, because they produce different results for purposes of resolving Helix's motion to dismiss. Under the laws of both jurisdictions, the "employment at will doctrine" provides that "'an employment contract of indefinite duration, that is, at will, can be legally terminated at the pleasure of either party at any time' without giving rise to a cause of action for breach of contract." *Parks v. Alpharma, Inc.*, 25 A.3d 200,

208 (Md. 2011) (quoting *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (Md. 1981)); *see also Adams*, 597 A.2d at 30 (same).

Maryland courts, however, provide an exception and allow a terminated employee to bring a common-law tort claim of wrongful discharge when he claims his termination violated public policy. *See Parks*, 25 A.3d at 208–10. And they specifically recognize a claim for wrongful discharge when the claimant alleges that he was fired in retaliation for filing a workers' compensation claim, based on the "clear mandate of Maryland public policy" against such retaliatory action expressed in Maryland's workers' compensation statute. *Ewing v. Koppers Co.*, 537 A.2d 1173, 1175 (Md. 1988); *see also* Md. Code Ann., Lab. & Empl. § 9-1105 (prohibiting retaliatory firing and imposing criminal penalty on employer for violation). As a result, if the Court applies Maryland law, Covington has stated a claim, and Helix's motion must be denied.

District of Columbia courts recognize a similar exception to the employment-at-will doctrine when the claimant alleges that his termination violated public policy. *See Carl v. Children's Hosp.*, 702 A.2d 159, 159–60 (D.C. 1997). And the District of Columbia's workers' compensation statute likewise prohibits retaliatory firing for seeking workers' compensation benefits. *See* D.C. Code § 32-1542. But that provision, in addition to declaring that conduct unlawful, also provides a specific remedy to the employee, including "restor[ation] to his employment . . . and compensat[ion] by his employer for any lost wages." *Id.* Accordingly, the District of Columbia Court of Appeals has refused to recognize a separate private right of action under common law for this type of claim, explaining that no such cause of action lies where the statutory provision "not only creates the wrong but also contains a specific remedy to

compensate the person suffering that wrong." *Nolting*, 621 A.2d at 1389. And, as the Court makes clear in further detail below, Covington's claim proves no exception.

Covington disputes this conclusion, arguing that District of Columbia law "recognizes a judicial remedy for wrongful termination arising out of a retaliatory firing due to an employee's filing of a Workers' Compensation Claim under [the] Maryland Workers' Compensation Law." Opp'n at 3. His argument requires some untangling. It is not clear from Covington's brief whether he is asserting that he may bring a common-law claim for wrongful discharge under District of Columbia law *based* on the public policy expressed by Maryland's workers' compensation statute, or whether he instead relies on the District of Columbia's workers' compensation statute as the source of the public policy but then looks to the Maryland law as the applicable statute for determining whether he has a statutory remedy.

Both articulations of his argument must fail, though. As for the former, when a state court allows a plaintiff to bring a common-law claim for wrongful discharge in violation of public policy, the relevant "public" is necessarily that of the *forum* state. And the declaration of that policy can only come from bodies—whether state or federal—that govern that forum state. *See Carl*, 702 A.2d at 164 ("[T]his court in the past has sought to make sure that any judicially recognized public policy exception to the at-will doctrine is 'carefully tethered' to rights officially recognized in statutes or regulations [enacted] by the elected representatives of the people—the 'public' whose policy we are talking about." (footnote omitted)); *see also Gantt v. Sentry Ins.*, 824 P.2d 680, 688 (Cal. 1992), *overruled on other grounds by Green v. Ralee Eng'g Co.*, 960 P.2d 1046, 1054 n.6 (1998) ("The employer is bound, at a minimum, to know the fundamental public policies *of the state and nation* as expressed in their constitutions and statutes." (emphasis added)); *Ewing*, 537 A.2d at 1175 (explaining that "society as a whole has

an interest in ensuring that its laws and important public policies are not contravened" and looking to the Maryland legislature for expressions of those policies).[1]

Indeed, the purpose of the exception is for state courts to "more fully effectuate" their political counterparts' policy determinations for the benefit of *their* constituents. *Adams*, 597 A.2d at 32 (quoting *Petermann v. Int'l Brotherhood of Teamsters*, 344 P.2d 25, 27 (Cal. 1959)). Those courts have no mandate to look beyond those bodies and seek to give effect to the public policies of their sister states, and this Court has encountered no instance, outside the conflict-of-law context, in which a state court ventured to do so. At the very least, District of Columbia courts have made no indication that they hold such an expansive view of the public policy exception, and this Court will not step in to enlarge it on their behalf.

The latter articulation of Covington's argument presents a tougher question, but the Court finds that it too does not withstand scrutiny. The District of Columbia's workers' compensation statute condemns firing an employee in retaliation for seeking benefits under the act and imposes criminal penalties for such conduct, *see* D.C. Code § 32-1542—a fairly clear expression of public policy. But in *Nolting*, the Court of Appeals declined to recognize a private right of action for those injured by such conduct, principally because the statute itself provided a remedy. *See* 621 A.2d at 1389. The Court of Appeals did not make clear that it *would* have allowed such a claim to proceed without the statutory remedy, although later decisions—particularly those in the wake of the Court of Appeals' decision to expand the scope of the public policy exception in

---

[1] As reflected above, in determining whether a cause lies for wrongful discharge, courts do also look to federal sources of public policy. *See, e.g.*, *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999). But the relevant public for those sources includes that of the particular state whose law a court applies. And thus allowing a claim for wrongful discharge based on a *federal* source of public policy does not present the same incongruency that allowing such a claim based on another state's law would pose.

*Carl*—suggest as much. *See, e.g., Freas v. Archer Servs., Inc.*, 716 A.2d 998 (D.C. 1998) (recognizing a claim for wrongful discharge in retaliation for filing a complaint alleging unlawful wage deductions under District of Columbia law).

But assuming that the Court of Appeals would allow that common-law claim to proceed if the District of Columbia's workers' compensation statute did not provide its own civil remedy, it does not necessarily follow that the cause of action would encompass the termination of an individual, like Covington, who sought compensation under a *different* state's statute or program. The District of Columbia statute does not prohibit wrongfully terminating the employment of such individuals. Rather, it prohibits terminating an employee because he has claimed or tried to claim "compensation," which the statute defines as "the money allowance payable to an employee or to his dependents as provided for *in this chapter*," D.C. Code § 32-1501(6) (emphasis added), or "because he has testified or is about to testify in a proceeding *under this chapter*." *Id.* § 32-1542 (emphasis added).

True, the Court of Appeals does not require an exact match between the statutory mandate and the allegedly wrongful firing to recognize a wrongful discharge claim based on a violation of public policy. *See Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 805–06 (D.C. 1999). And the conduct need not be "expressly prohibited." *Carl*, 702 A.2d at 165 (Terry, J., concurring). But the Court of Appeals has repeatedly cautioned that the public-policy exception is a "very narrow" one. *Id.* at 160 (quoting *Adams*, 597 A.2d at 34). There must be a "close fit" between the policy declared by the statute and the conduct at issue, *id.* at 164, "carefully tethered to rights officially recognized in statutes or regulations by the elected representatives of the people—the 'public' whose policy we are talking about," *id.* (quotation marks and footnote omitted) (quoting *Gantt*, 824 P.2d at 688).

9

Given that direction, this Court is hard pressed to recognize the exception that Covington apparently seeks here. Nothing in the District of Columbia's retaliation provision proves with that level of clarity that the District of Columbia pursues a policy of protecting employees from retaliatory firing when they file a workers' compensation claim with another state's program. And that coheres, in particular, with the Court's earlier conclusion that the relevant "public policy" when confronted with a wrongful discharge claim is that of the *forum* state. The clear public policy that flows from the statute is an effort to encourage employees to seek the benefits they are entitled to under *District of Columbia* law. It would be beyond the purview of this Court to assume that the District of Columbia's legislature would also encourage employees, even those who work in the District, to seek benefits under a scheme that it did not enact and does not administer.

The upshot, then, is that the Court would reach a different result if it determined that District of Columbia law governs Covington's claim, as opposed to Maryland law. But that does not mean that a "true conflict" exists. In fact, as the Court's discussion of the relevant public policies in play here makes clear, these circumstances present a quintessential "false conflict."

As noted above, a false conflict arises "[w]hen the policy of one jurisdiction would be advanced by application of its law, and the policy of the other jurisdiction would not be advanced by application of its law."[2] *Coleman*, 667 A.2d at 816 (brackets omitted) (quoting

---

[2] Some courts have used "false conflict" as a blanket term encompassing both when the outcome would not differ if either jurisdiction's laws were applied as well as when only one of those jurisdictions' interests would actually be advanced by application of its laws. *See, e.g.*, *Beach TV Props., Inc. v. Solomon*, 306 F. Supp. 3d 70, 92 (D.D.C. 2018) (defining a "false conflict" to include "when either (1) the laws of the interested states are the same; (2) when those laws, though different, produce the same result when applied to the facts at issue; or (3) when the policies of one state would be advanced by the application of its laws and the policies of the states whose laws are claimed to be in conflict would not be advanced by application of their

*Kaiser-Georgetown Comty. Health Plan. Inc. v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985)). In that circumstance, "the law of the interested state prevails." *Biscoe v. Arlington Cty.*, 738 F.2d 1352, 1360 (D.C. Cir. 1984).

The Court of Appeals' decision in *Coleman* is instructive on this point. In that case, the court confronted whether a detective for the District of Columbia's Metropolitan Police Department, sued for alleged assault and battery that happened in Maryland but based on his purported violation of a District of Columbia statute and police regulations, could raise the affirmative defenses of contributory negligence and assumption of risk. *See* 667 A.2d at 814, 817. District of Columbia courts had declined to recognize the defenses, explaining that doing so would undermine the "public policy behind [the statute and police regulations] . . . 'to promote the safety of citizens by deterring police use of excessive force.'" *Id.* at 817 (quoting *District of Columbia v. Peters*, 527 A.2d 1269, 1274 (D.C. 1987)). But the Court of Appeals in *Coleman* determined that that policy was specific to ensuring the safety of citizens "within the District itself," and thus that the District of Columbia did not similarly have a "compelling interest" in ensuring that District officers who committed negligent violations of District regulations in a *different* state were held liable. *Id.* Rather, Maryland had the "primary obligations and duties with respect to public safety in Maryland," and so the Court of Appeals concluded that Maryland law should apply. *Id* at 817–18.; *see also Williams v. Rawlings Truck Line, Inc.*, 357 F.2d 581, 585–86 (D.C. Cir. 1965) (finding a false conflict between New York's and the District of Columbia's vehicle ownership rules because the District's interests were not

---

law" (quoting *Long v. Sears Roebuck & Co.*, 877 F. Supp. 8, 11 (D.D.C. 1995)). Here, the Court uses the term only to refer to the latter circumstance, consistent with recent usage by the District of Columbia Court of Appeals. *See Barimany*, 73 A.3d at 967.

advanced by applying its rules to the negligence suit at issue); *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 43–44 (D.D.C. 2016) (applying *Coleman* and finding a "false conflict" between Jordanian law and District of Columbia law because the District had no interest in limiting the liability of tortfeasors who commit torts outside the District).

Here, the District of Columbia's interests would not be advanced by the application of its laws to Covington's unlawful discharge claim. Nothing in the District's anti-retaliation provision suggests that the District sought to extend protections to individuals who have sought benefits in another state. Rather, the provision appears intended to encourage employees to seek benefits specifically under the District's program. Indeed, as noted above, the anti-retaliation provision covers only those individuals who seek compensation under the act, and thus it does not even prohibit the alleged conduct by Helix. The Court can hardly conclude, then, that the District of Columbia has a "compelling interest" in whether Covington may proceed with his claim seeking damages for that alleged conduct—and, in particular, an interest in the result the Court would reach if it applied District of Columbia law: that he may not. *Coleman*, 667 A.2d at 817. Covington's claim, based on his seeking compensation with the Maryland Workers' Compensation Commission, simply does not implicate the District's anti-retaliation provision and its attendant policy aims.

Maryland, on the other hand, has a strong interest in this dispute. Through the anti-retaliation provision, the Maryland legislature "expressed the public policy of [the] State—an employee may not be discharged for filing a compensation claim." *Kern v. S. Baltimore Gen. Hosp.*, 504 A.2d 1154, 1157 (Md. 1986). And Covington alleges that Helix did just that—terminated him because he filed a compensation claim under the Maryland act. But while Maryland's anti-retaliation provision imposes penalties for such conduct, it does not provide a

civil remedy for the injured employee. The very purpose of recognizing a tort for wrongful discharge in contravention of public policy was to avoid "the prospect of a remediless employee." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 183 (Md. 1989). Applying Maryland law to Covington's claim—both Maryland's common law and the relevant statutory sources of public policy—would vindicate that interest by allowing Covington to seek a remedy for his alleged wrong.

At bottom, the District of Columbia's interests would not be advanced by the application of its laws to the issue of whether Covington may pursue a claim for wrongful discharge under these circumstances, while Maryland's would. The Court must therefore apply Maryland law. *See Biscoe*, 738 F.2d at 1360. As discussed above, under Maryland law, Covington's claim is actionable, and the Court will therefore deny Helix's motion to dismiss.

## IV. Conclusion and Order

For all the above reasons, Helix's Motion to Dismiss, ECF No. 3, is **DENIED**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 7, 2019