UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL M. COVINGTON,<br><br>    *Plaintiff*,<br><br>v.<br><br>HELIX ELECTRIC, INC.,<br><br>    *Defendant*. | Civil Action No. 18-2727 (TJK) |

**MEMORANDUM OPINION**

Plaintiff Daniel Covington worked as an electrician for Defendant Helix Electric, Inc. and claimed to have injured his ankle while working on a job site in the District of Columbia. Covington reported this injury to Helix Electric and later filed a workers' compensation claim for it. But several of Covington's co-workers reported to Helix Electric that, on the day Covington claimed to have injured his ankle on the job, he told them that he injured it at home before work. Helix Electric then fired Covington. Covington later sued Helix Electric, asserting one count of abusive discharge in contravention of public policy and claiming that Helix Electric fired him in retaliation for filing a workers' compensation claim. Helix Electric now moves for summary judgment. Because the Court agrees that there is no genuine dispute as to any material fact and Helix Electric is entitled to judgment as a matter of law, it will grant Helix Electric's motion.

**I.    Background**

In November 2016, Plaintiff Daniel Covington, a resident and citizen of Maryland, worked as an electrician for Helix Electric, Inc., a California corporation with its principal place of business there. *See* ECF No. 1 ¶¶ 1–3; ECF No. 9 ¶¶ 2–3; ECF No. 31-14 at 2; ECF No. 31-15 at 2; ECF No. 33-3 at 7. At that time, Helix Electric's employee handbook imposed "standards of

conduct" that an employee could be fired for violating, and one of those standards prohibited an employee from falsifying any employment-related "reports, records and statements." ECF No. 31-6 at 3; ECF No. 33-1 ¶¶ 3–4.

On November 6, 2016, while working for Helix Electric in the District of Columbia, Covington claimed to have tripped over materials lying around the worksite, injuring his ankle. *See* ECF No. 31-7 at 7; ECF No. 33-1 ¶ 7. He reported this incident to a supervisor, and a formal injury report was completed the next day. *See* ECF No. 31-7; ECF No. 33-1 ¶¶ 7–8. Covington signed this report, which recited his narrative of how he injured his ankle. ECF No. 31-7 at 7; ECF No. 33-1 ¶ 8. Around that time, however, three of Covington's co-workers separately reported to a supervisor that Covington told them that he had injured his ankle at home before coming into work on November 6, and each memorialized their reports in writing. *See* ECF No. 31-8 at 3–6; ECF No. 31-9 at 2; ECF No. 31-10 at 2; ECF No. 31-12 at 2; ECF No. 31-13 at 3. On November 14, Helix Electric suspended Covington pending an investigation. ECF No. 36-2 at 9. On November 18, Covington filed a workers' compensation claim in Maryland. *See id.* at 11.[1] On November 21, Helix Electric fired Covington. ECF No. 31-14 at 2; ECF No. 33-1 ¶ 15. In September 2018, Helix Electric agreed to settle Covington's workers' compensation claim before the Maryland Workers' Compensation Commission. *See* ECF No. 33-3 at 10.

Then, while represented by counsel, Covington sued Helix Electric, asserting one count of abusive discharge in contravention of public policy and alleging that Helix Electric fired him for

---

[1] Covington claims to have filed his workers' compensation claim on November 18 and submitted evidence supporting this claim. *See* ECF No. 33-1 ¶ 16; ECF No. 36-2 at 11. Helix Electric argues that Covington did not file this claim until January 2017 and submitted evidence supporting this argument. *See* ECF No. 31-15 at 2; ECF No. 31-16 at 4; ECF No. 34-1 ¶ 21. At summary judgment, the Court must view any genuinely disputed fact in the light most favorable to the non-movant, so it presumes that Covington filed his workers' compensation claim on November 18. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Even so, this fact is immaterial. *See id.*

filing a workers' compensation claim. *See* ECF No. 1. Helix Electric moved to dismiss, arguing that Covington's claim failed as a matter of law under District of Columbia law. *See* ECF No. 3; ECF No. 3-1. The Court denied that motion, holding that Maryland law governed Covington's claim and that it was actionable under Maryland law. *See* ECF No. 8. Helix Electric then answered, and, after an unsuccessful mediation, discovery began. *See* ECF No. 9; ECF No. 22; ECF No. 25. Following discovery, Covington's counsel moved to withdraw, and the Court granted that motion. *See* ECF No. 27; Minute Order of February 25, 2021. Covington then proceeded pro se.

Helix Electric now moves for summary judgment. *See* ECF No. 31. The Court warned Covington of the potential consequences of failing to oppose Helix Electric's motion, ECF No. 32, and Covington submitted several opposition filings, *see* ECF No. 33; ECF No. 35; ECF No. 36.

**II.    Legal Standard**

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden to show this. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the movant meets this burden, the burden shifts to the nonmoving party to "present affirmative evidence" and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256–57. If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then the movant is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). And although Covington has litigated the summary-judgment stage of this case pro se, "even a pro se plaintiff must comply with the Federal Rules of Civil Procedure," including the

requirement to marshal sufficient evidence to defeat a well-founded motion for summary judgment. *See Hedrick v. FBI*, 216 F. Supp. 3d 84, 93 (D.D.C. 2016).

**III.   Analysis**

Helix Electric argues that it is entitled to summary judgment because (1) under Maryland law Covington must prove that Helix Electric fired him solely because he filed a workers' compensation claim and (2) it is undisputed that Helix Electric did not fire Covington solely because he filed a workers' compensation claim. The Court agrees.

Maryland recognizes a cause of action for "abusive discharge" when an employer fires an employee and "the motivation for the discharge contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). And "[d]ischarging an employee *solely* because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy." *Ewing v. Koppers Co.*, 537 A.2d 1173, 1175 (Md. 1988) (emphasis added); *see also* Md. Lab. & Empl. Code § 9-1105(a) (prohibiting an employer from firing a "covered employee . . . solely because the covered employee files" a workers' compensation claim).[2] But if the employee was not fired "solely" because he filed a workers' compensation claim, an abusive-discharge claim under *Ewing* fails. *See Kern v. S. Balt. Gen. Hosp.*, 504 A.2d 1154, 1157–59 (Md. Ct. Spec. App. 1986). Thus, "an employer who has mixed motives for discharging an employee may avoid liability," even if one of the motives is that the employee filed a workers' compensation claim. *See Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 650 (D. Md. 1998);

---

[2] Whether the cause of action recognized in *Ewing* is a common-law or statutory claim is unclear. *Compare Young v. Mayor*, 223 Md. App. 776, 2015 WL 5894318, at *2 n.2 (Md. Ct. Spec. App. June 2, 2015) (common-law), *with Heade v. Wash. Metro. Area Transit Auth.*, No. 09-cv-2460 (ESH), 2010 WL 938462, at *2 (D.D.C. Mar. 12, 2010) (statutory), *aff'd*, No. 10-7043, 2010 WL 3521596 (D.C. Cir. Sept. 2, 2010) (per curiam). At any rate, substantively, "the cause of action is the same." *See Heade*, 2010 WL 938462, at *2.

*accord Heade*, 2010 WL 3521596, at *1.[3]

Helix Electric argues that it had at least one other motive for firing Covington, defeating Covington's claim as a matter of law—namely, it had a "justifiable belief" that Covington made a false claim of workplace injury, thereby violating its employee handbook and giving Helix Electric cause to fire him. *See Bowman v. Jack Cooper Transp. Co.*, 399 F. Supp. 3d 447, 454 (D. Md. 2019). Helix Electric's justifiable belief is supported by the fact that three of Covington's co-workers separately informed a supervisor that Covington claimed to have injured his ankle at home on November 6. *See* ECF No. 31-8 at 3–6; ECF No. 31-9 at 2; ECF No. 31-10 at 2; ECF No. 31-12 at 2; ECF No. 31-13 at 3. And one of them even testified under oath to that effect in Covington's case before the Maryland Workers' Compensation Commission. *See* ECF No. 31-11.

In response, Covington baldly "denie[s]" these facts and claims that he is being forced to "prove a negative"—presumably, he means proving that his co-workers did not report him to a supervisor. *See* ECF No. 33-1 ¶¶ 2, 9–12. But Covington's "bare denial is insufficient to raise a genuine dispute at the summary judgment stage." *See Judicial Watch, Inc. v. U.S. Dep't of State*, --- F. Supp. 3d ----, 2021 WL 3633611, at *5 n.3 (D.D.C. Aug. 17, 2021) (citing *Jeffries v. Barr*, 965 F.3d 843, 859 (D.C. Cir. 2020)). The Court is unaware of any "prove a negative" exception to this rule, and at any rate Covington easily could have acquired evidence in discovery supporting a claim that his co-workers did not report him, if any such evidence existed.

Covington also denies that he told his colleagues what they reported he said to them about his ankle injury. *See* ECF No. 33-2 ¶ 3; ECF No. 33-3 at 4. Even assuming his denials create a

---

[3] Whether the alternative motive in a mixed-motive firing has to be "legitimate"—that is, not separately prohibited—is unclear. *Compare Ford*, 999 F. Supp. at 650 (holding that the alternative motive must be legitimate), *with Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 470, 476 (D.D.C. 1994) (holding that it does not have to be legitimate). In any event, Helix Electric's alternative motive here is that Covington violated its employee handbook, an undisputedly legitimate motive.

genuine dispute about whether what his co-workers reported was true, this is not a dispute of material fact because what matters here is merely whether Covington's colleagues reported him, thus giving Helix Electric a legitimate basis to fire him. There is no genuine dispute about that.[4]

Covington also points out that Helix Electric fired him three days after he filed his workers' compensation claim and suggests that this "close temporal proximity" alone suffices to get him past summary judgment. *But cf. White v. Parker*, No. 2171, 2017 WL 727794, at *13 (Md. Ct. Spec. App. Feb. 24, 2017) (concluding that "temporal proximity, on its own, is not sufficient to survive summary judgment" on a retaliation claim arising under Maryland's analogue to Title VII). Even assuming this evidence created a genuine dispute of fact as to whether Helix Electric fired Covington because he filed a workers' compensation claim, it does not create a genuine dispute of *material* fact. That is because there is no dispute about whether Helix Electric had another motive for firing Covington—a justifiable belief that he falsely claimed to have injured himself on the job.

In sum, there is no genuine dispute of material fact that Helix Electric did not fire Covington "solely" because he filed a workers' compensation claim. Thus, Covington's claim fails as a matter of law.

---

[4] Whether Covington's colleagues' reports were true could be relevant if Maryland recognized an expansive "cat's paw" theory of liability in this context—that is, if Helix Electric could be held liable for abusive discharge even if it did not fire Covington solely because he filed a workers' compensation claim but was sufficiently influenced to fire him by his co-workers, who in turn wanted to see him fired solely because he filed a workers' compensation claim. *See Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 186–87 (D.D.C. 2016) (explaining the "cat's paw theory" of liability in the Title VII context). Granted, Covington has not advanced this theory, and the Court finds nothing in Maryland law to suggest that Maryland would permit "cat's paw" liability in this context. And even if Maryland would do so, Covington's claim still would fail on this record. Covington himself testified at his deposition that there was no "animosity" between he and his co-workers and that he could not say what their motives were for reporting him. *See* ECF No. 31-13 at 3–4. And nothing in the record suggests that Covington's co-workers wanted to see him fired solely because he filed a workers' compensation claim—which, after all, happened *after* they reported him.

**VI.     Conclusion**

       For these reasons, the Court will grant Helix's motion for summary judgment.  A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: February 1, 2022